[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 11, 2010
JOHN LEY
CLERK

No. 09-12772
Non-Argument Calendar
_____

D. C. Docket No. 08-00603-CV-BE-S

JO E. CHILDRESS,
a.k.a. Jodii E. Childress,

Plaintiff-Appellant,

versus

CATERPILLAR LOGISTICS SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 11, 2010)

Before TJOFLAT, EDMONDSON and WILSON, Circuit Judges.

PER CURIAM:

Jo E. Childress, a black female over the age of 40, appeals the district court's grant of summary judgment in favor of her former employer, Caterpillar Logistics Services, Inc. ("CLS").[1] Childress raised claims of race and age discrimination under Title VII, 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). No reversible error has been shown; we affirm.

Childress worked at CLS in a supervisory management position. She received notice that she would be separated from her job as part of a reduction in forces ("RIF") due to an overall loss of work in the preceding months. In the three months before Childress was to be separated, she was placed in CLS's Priority Candidate Placement Process ("PCPP"), which was designed to help displaced management employees find alternative salaried positions within CLS. But the PCPP yielded no available positions; and Childress was terminated.

On appeal, Childress challenges CLS's failure to hire her for an hourly team

---

[1] We review a grant of summary judgment de novo; and we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999).

leader position and a human resources management position.[2] To make a prima facie case of discriminatory failure-to-hire, a plaintiff must show that (1) she was a member of a protected class; (2) she applied for and was qualified for an available position; (3) she was rejected; and (4) the defendant filled the position with a person outside the protected class. Walker v. Prudential Prop. And Cas. Ins. Co., 286 F.3d 1270, 1274-75 (11th Cir. 2002).[3]

We first address Childress's challenge about the hourly position. Another, younger supervisor also targeted for the RIF asked for and obtained an hourly position with CLS. Childress alleged that she should have been given the opportunity to apply for an hourly position. In addition, after Childress was terminated, a white employee who Childress previously had supervised began assuming duties typically performed by a team leader. Childress alleged that she also should have been allowed to apply for this position. The district court concluded that Childress made no prima facie case of failure-to-hire because Childress had not applied for available hourly positions.

We agree with the district court. Childress admitted that she did not apply

---

[2]In the district court, Childress also challenged her termination pursuant to the RIF. But she does not address this claim on appeal and, thus, she has abandoned it. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

[3]Because this case is a circumstantial evidence case, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), applies. See Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th Cir. 2005) (ADEA and Title VII).

3

for an available hourly position, as was required to make a prima facie case. She argues that she was not required to apply for the positions because she did not know they were available. But Childress fails to appreciate the nature of these positions: they were not posted available positions to which interested employees could apply. The other supervisor targeted by the RIF asked CLS to demote her to an hourly position in lieu of termination. When the PCPP yielded no available salaried positions, CLS accommodated this request. Childress made no inquiry about the possibility of moving to an hourly position, even though she knew CLS had both salaried and hourly positions.[4] And that another employee assumed additional responsibilities in Childress's department does not imply that CLS created a new, available position to which Childress was entitled to apply.[5]

Now we address the human resources position. Childress learned about, and expressed interest in, an open human resources manager position. But her supervisors explained to her that the position was not entry level. The district court determined that, because Childress had no human resources experience, she was

[4]The cases Childress cites to on appeal for the proposition that she did not have to apply for the hourly jobs are distinguishable because these cases involved actual job openings that were filled without advertisement or a posting system and situations where employees made requests about the availability of the jobs.

[5]Childress argues that CLS had a duty under the PCPP to make known to her available positions. But the PCPP applied only to salaried positions similar to the position of the targeted employee, not hourly positions.

unqualified for the job, and so failed to make a prima facie case. And even still, Childress had not shown that CLS's legitimate, non-discriminatory reasons for not hiring her were pretextual.

Childress argues that she was more qualified than the younger candidate selected for the job and that CLS's reasons for not hiring her were pretextual. We are unpersuaded: Childress concedes that she had no previous work experience in a human resources department; and thus, she could not show that she was qualified for the job.

And neither are we persuaded that CLS's reasons for not selecting her for the position were pretextual. To show pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (citation omitted). Here, the chosen candidate had worked in a human resources department as a customer services representative, fielding calls from employees and managers about a variety of human resources issues. Nothing evidences that CLS's reason for choosing a candidate with relevant experience over a candidate with no experience is unworthy of credence or

5

that a discriminatory motive was the true reason for the choice. Childress simply argues that she was the more qualified candidate for the job. But Childress's own disagreement with CLS's selection criteria is insufficient to show pretext. See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (an employee cannot succeed in showing pretext "by simply quarreling with the wisdom of that reason").

So, because Childress cannot show that she applied for an available hourly position or qualified for the human resources position, she failed to make a prima facie case of failure-to-hire.

AFFIRMED.